[Civ. No. 10117. First Appellate District, Division Two.—January 15, 1937.]

PACIFIC TANK AND PIPE COMPANY (a Corporation), Appellant, v. PACIFIC BOX CORPORATION (a Corporation) et al., Respondents.

I. M. Peckham for Appellant.

Thomas, Beedy & Paramore for Respondents.

SPENCE, J.—This action was brought by the plaintiff, the lessor, against defendant, the assignee of the lessee, to recover damages for alleged breaches of lease executed on October 1, 1929. The complaint was in four counts. The cause was tried by the court sitting without a jury and in the judgment entered, plaintiff was denied any recovery upon the second and third counts. Plaintiff appeals from those portions of the judgment relating to said second and third counts.

We will first turn to count two of the complaint which was based upon an alleged breach upon the part of defendant by reason of its failure to "install" a sprinkler system in the box factory upon the premises. The first lease between plaintiff and defendant's assignor, Mercantile Box Company, was executed on October 1, 1924. There were no buildings upon the premises at that time. The clauses of the 1924 lease which may throw light upon the questions involved with respect to the 1929 lease will be set forth in full. The italics are ours.

Paragraph 3 of the 1924 lease provided: "The Lessee agrees to *erect and* maintain upon said leased premises, suitable buildings for the manufacture of box material including sprinkler equipment and wiring, which shall be security for the performance of its part of the terms of this lease, and which shall become the property of the Lessor at the termination of this lease."

Paragraph 9 of said lease provided: "The Lessor grants to the Lessee the privilege of connecting with the water tank of the Lessor for the purpose of installing a sprinkler system in said building. The Lessor also grants to the Lessee the right to connect with the East Bay Channel for a sewer in connection with their plant."

Paragraph 11 of said lease provided: "The Lessee agrees to pay all costs of *the erection and* maintenance of all buildings, improvements or alterations made, or operations carried on, by the Lessee, in about or in connection with the leased

premises, to pay all taxes and charges in connection therewith, and to comply with all laws, orders or regulations of the federal, state, county, municipal, or other lawful authority, appertaining to or affecting said leased premises."

Paragraph 14 of said lease provided: "The Lessee agrees to *erect and* maintain a sprinkler system in all buildings and to maintain such rules and conditions required by the Board of Fire Underwriters to not in any way increase the fire hazard of either party."

After the execution of the 1924 lease, the lessee, Mercantile Box Company, erected a box factory upon the premises but did not install a sprinkler system. The lease was thereafter renewed in 1929 with certain changes. In the 1929 lease the foregoing paragraphs were repeated but the italicized words were omitted. In 1930 the lessee assigned the 1929 lease to defendant with the consent of plaintiff. Defendant agreed in writing to comply with the terms of the 1929 lease in consideration of the assignment thereof.

█ In support of the judgment denying recovery under the second count of the complaint, respondent contends that it was not obligated under the 1929 lease and its agreement made at the time of the assignment to "install" a sprinkler system. It further contends that recovery was also properly denied because of alleged waiver and estoppel on the part of appellant. Appellant, on the other hand, contends that the 1929 lease did impose upon the lessee, and the agreement to comply therewith did impose upon respondent as assignee, the obligation to "install" a sprinkler system. We believe that respondent's contention must be sustained and that it is therefore unnecessary to discuss the question of waiver and estoppel.

The parties agree that ordinarily the word "maintain" merely means to keep up or to preserve something already in existence and that an agreement to "maintain" does not ordinarily include an agreement to erect or provide something not already in existence. (*O'Connell* v. *Kansas City*, 208 Mo. App. 174 [231 S. W. 1040]; 38 C. J. 335, sec. 2.) It is further agreed that the word "maintain" may sometimes be given a broader meaning and that an agreement to "maintain" may, under certain circumstances, include an agreement to erect or provide something not already in existence. (38 C. J. 336, sec. 2.) It appears, however, that this is the

unusual rather than the usual meaning of the word. We are of the opinion that the record before us does not show circumstances which warrant a construction adopting the unusual rather than the usual meaning. Considering only the terms of the 1929 lease, it may be freely conceded that the terms thereof are somewhat ambiguous with respect to the subject under discussion, but when the 1929 lease is compared with the 1924 lease, that ambiguity disappears. The lessee definitely agreed to "erect" as well as to "maintain" certain improvements, including a sprinkler system under the terms of the 1924 lease. When the 1929 lease was drawn, the parties deleted the words "erect" and "erection" wherever they had appeared in the 1924 lease, but repeated the provisions for maintenance in the same terms which appeared in the 1924 lease. This change is of controlling importance, for it affirmatively shows that the parties intended to eliminate from the 1929 lease the obligation to "erect" which was imposed by the 1924 lease. Thereafter, the obligation, if any, to "erect" a sprinkler system existed by virtue of the terms of the 1924 lease but not by virtue of the terms of the 1929 lease. When respondent took the assignment of the 1929 lease, it assumed only the obligations imposed by the 1929 lease and not the obligations imposed by the 1924 lease. It therefore did not assume any obligation to "erect" a sprinkler system.

In referring to the omission of the words "erect" and "erection" from the 1929 lease, counsel for appellant says that "it is very evident that this was an oversight". We do not so view it, but in any event, this is not an action to reform said lease. When the parties executed the 1929 lease, appellant perhaps had in mind the provisions of the 1924 lease which specifically required the lessee therein to erect a sprinkler system. Perhaps appellant further had in mind the provisions of paragraphs 11 and 14 as repeated in part in the 1929 lease. Under these last-mentioned paragraphs an obligation to erect a sprinkler system would have arisen at any time that its installation might have been required by the authorities therein mentioned. (See *Cohen* v. *E. & J. Bass, Inc.*, 246 N. Y. 270 [158 N. E. 618].) It was therefore quite logical to require that the lessee under the 1929 lease should "maintain" any sprinkler system erected as specifically required by the 1924 lease or that might be erected as contingently required under said paragraphs of the 1929 lease.

But the uncontradicted evidence shows that no such system was ever required by said authorities. We therefore conclude that respondent, as assignee under the 1929 lease, was under no obligation to erect a sprinkler system and that the portion of the judgment denying appellant any recovery because of an alleged breach of such obligation should be affirmed.

■ The third count of the complaint was based upon the alleged breach of paragraph 8 of the lease, which read as follows: "The lessee agrees to keep all trackage and lumber bearings in good repair and renew all defective rails and ties and to turn over at the termination of its lease all rail systems and lumber bearings in good condition." The court found that respondent had breached these provisions of the lease, but denied appellant any recovery on said count. Its findings were as follows:

"It is true that defendant failed to keep said trackage or lumber bearings in good repair and to renew defective rails and ties, and to turn over to plaintiff at the expiration of said lease all rail systems and lumber bearings in good condition. But the Court finds that it is not true that the necessary or reasonable cost of repairing said rail system and lumber bearings and replacing defective rails and ties, and of putting said trackage and lumber bearings in reasonably good and workable condition was or is the reasonable sum of $3278.00, or any sum, and therefore it is not true that plaintiff has suffered damage in the sum of $3278.00, or any sum, as alleged in plaintiff's third cause of action."

Appellant contends that the trial court erred in finding that it had suffered no damage by reason of said breach of said provisions of the lease and we are of the opinion that this contention must be sustained. The difficulty arose because of the state of appellant's evidence regarding the amount of the damage. Appellant's witness estimated the damage at $3,278. He testified as to the amount of lumber required to put the ties and lumber bearings in good repair. He also gave certain figures relating to the cost of installation. On cross-examination he admitted that he could not make a segregation of the figure of $3,278 between the amount allocated to ties and the amount allocated to lumber bearings. Respondent's witnesses also testified on the subject and gave different figures for the cost of lumber and the cost of in-

stallation. There was a decided conflict in the evidence and while the testimony of appellant's witnesses was rather unsatisfactory, even the testimony given by respondent's witnesses showed substantial damage. Under these circumstances the finding to the effect that appellant suffered no damage is without support in the evidence.

The portion of the judgment relating to the second count is affirmed. The portion of the judgment relating to the third count is reversed, with directions to the trial court to grant a new trial upon said third count solely upon the issue of damage.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 13, 1937.